**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF TENNESSEE**
**NASHVILLE DIVISION**

| | | |
|---|---|---|
| **CHRISTOPHER KIRBY,** | ) | |
| No. 0571547, | ) | |
| | ) | |
| Plaintiff, | ) | **No. 3:17-cv-01027** |
| | ) | **CHIEF JUDGE CRENSHAW** |
| v. | ) | |
| | ) | |
| **TONY MAYES, *et al.*,** | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM**

Plaintiff, an inmate of the Bledsoe County Correctional Complex in Pikeville, Tennessee, brings this *pro se, in forma pauperis* action under 42 U.S.C. § 1983, the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.* (ADA), and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a) (Rehabilitation Act) against Tony Mays, Ernest Lewis, Carolyn Jordan, Frank Heroux, Michael Ward, Charles Sidberry, Tom Rushing, f/n/u Smith, f/n/u Green, f/n/u Davis, f/n/u McGlasson, f/n/u Shoa, and the Tennessee Department of Correction (TDOC), alleging violations of the Plaintiff's federal civil and constitutional rights. (Doc. No. 1). As relief, the Plaintiff seeks compensatory damages and injunctive relief. (Id. at 28).

The complaint is before the Court for an initial review pursuant to the Prison Litigation Reform Act ("PLRA"), 28 U.S.C. §§ 1915(e)(2) and 1915A.

**I.     PLRA Screening Standard**

Under 28 U.S.C. § 1915(e)(2)(B), the court must dismiss any portion of a civil complaint filed *in forma pauperis* that fails to state a claim upon which relief can be granted, is frivolous, or seeks monetary relief from a defendant who is immune from such relief. Section 1915A similarly

1

requires initial review of any "complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity," id. § 1915A(a), and summary dismissal of the complaint on the same grounds as those articulated in § 1915(e)(2)(B). Id. § 1915A(b).

The Sixth Circuit has confirmed that the dismissal standard articulated by the Supreme Court in Ashcroft v. Iqbal, 556 U.S. 662 (2009), and Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), "governs dismissals for failure to state a claim under those statutes because the relevant statutory language tracks the language in Rule 12(b)(6)." Hill v. Lappin, 630 F.3d 468, 470–71 (6th Cir. 2010). Thus, to survive scrutiny on initial review, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." Tackett v. M & G Polymers, USA, LLC, 561 F.3d 478, 488 (6th Cir. 2009) (citing Gunasekera v. Irwin, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)).

Although *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Jourdan v. Jabe, 951 F.2d 108, 110 (6th Cir. 1991), the courts' "duty to be 'less stringent' with *pro se* complaints does not require us to conjure up [unpleaded] allegations." McDonald v. Hall, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).

## II.     Alleged Facts

According to the complaint, the Plaintiff is confined to a wheelchair.  In October 2016, the Plaintiff was confined in the Riverbend Maximum Security Institution ("Riverbend") in Nashville, Tennessee, in a unit without handicapped-accessible shower, ramps, or handrails.  (Doc. No. 1 at 6).  As a result, the Plaintiff had difficulty transferring himself in and out his wheelchair and into the shower and onto the toilet.  Upon his placement in this unit, the Plaintiff contacted Ernest Lewis, acting Associate Warden of Security, and Tony Mays, Warden, and asked for  reassignment to an accessible unit.  The Plaintiff received no response.

The Plaintiff was classified as "limited activity" due to his confinement to a wheelchair. Tom Rushing, who oversees inmate classification at Riverbend, was notified of the Plaintiff's classification but he refused to accommodate the Plaintiff's disability by recommending that the Plaintiff be housed in an accessible unit.  (Id. at 3).  The Plaintiff sent multiple written requests to Defendants Lewis and Mays asking to be transferred to a handicapped-accessible location. Neither Defendant responded, and the Plaintiff remained in the same unit.  (Id. at 7-8).

The Plaintiff contacted the medical department, stating that he was "in need of a real shower chair and handrails in the shower to safely take a shower."  (Id. at 8).  Although medical staff responded by ordering a medical shower chair for the Plaintiff and promising to notify the Warden of the Plaintiff's situation, the Plaintiff had to shower for weeks without the chair or handrails and "almost fell 3 times," which caused the Plaintiff to experience pain.  (Id.)   When the Plaintiff returned to the medical department, a staff member prescribed the Plaintiff pain medication and told the Plaintiff the Warden would be notified again of the Plaintiff's need for accommodations.

On May 7, 2017, still housed in the same unit, the Plaintiff fell while attempting to transfer himself onto the toilet. As a result of the fall, he sustained injuries to his head and back. During his examination by physicians assistant Shao, the Plaintiff stated that his current pain medication was not strong enough. Shao refused to prescribe the Plaintiff stronger pain medication. (Id. at 8).

The Plaintiff sent sick call requests on May 14, 2017, May 15, 2017, and May 18, 2017, due to pain, loss of appetite, and insomnia; however, he was not permitted to return to the medical department. (Id. at 9). He asked Unit Manager Davis to assist him with obtaining medical treatment and a transfer to a housing unit equipped to meet the needs of inmates with ambulatory disabilities. Davis told the Plaintiff he was unable to help without the permission of the Unit Manager. (Id. at 9).

On May 22, 2017, the Plaintiff was permitted to see a nurse who placed the Plaintiff on a physician referral list. (Id.) On that same day, the Plaintiff "was taken out of [his] cell to be given a shower in the same non-handicap shower . . . ." (Id.) The Plaintiff asked Corporal of Operations f/n/u Smith to assist him in entering the shower, and Smith replied: "It was not his job to help the handicap [sic], and [the Plaintiff] need[ed] to grow up and stop being a baby and more of a man." (Id.) While returning to the Plaintiff's cell, the Plaintiff told Smith he was going to "write him up" for Smith's comments. Smith "became upset and maliciously push[ed] [the Plaintiff's] wheelchair real hard and fast, slamming [the Plaintiff] face first into the concret[e] wall." (Id.) The Plaintiff sustained a black eye and a "whip lash" back injury. (Id.)

The Plaintiff attempted to obtain medical attention for his injuries over the next seven hours but Smith refused to let the Plaintiff out of his cell. (Id. at 10). Smith gave the Plaintiff an ice bag and threatened the Plaintiff's safety if he told anyone what had happened. When the Plaintiff told

Sergeant of Operations Michael Ward about the incident, Ward told the Plaintiff he was "full of shit" and refused to let the Plaintiff see a nurse or doctor. (Id.) On the following day, Smith returned to the Plaintiff's cell and threatened "that he would have [the Plaintiff] fucked off if [he] told." (Id.)

Davis responded to the Plaintiff's request for medical attention by sending a nurse to the Plaintiff's cell to evaluate him. During the Plaintiff's examination, Ward sent an officer into the Plaintiff's cell to listen to his conversation with the nurse. (Id. at 11). Corrections Officer f/n/u McGlasson called the Plaintiff a "snich" [sic] and said he "would get what [he] had coming." (Id.)

Shortly thereafter, Ward confronted the Plaintiff in the company of McGlasson, and the two officers "became upset and aggressive . . . ." (Id.) They picked the Plaintiff up in his wheelchair and slammed the wheelchair to the floor; McGlasson also choked the Plaintiff. (Id.) The Plaintiff bit McGlasson to stop him from choking the Plaintiff, and the Plaintiff states that he was disciplined for biting McGlasson and has "taken responsibility for [his] action . . . but that dose [sic] not give [McGlasson] a right to slam a person that is fully secure, in full restraints, who is disabled and confined to a wheelchair, and then chooke [sic] him." (Id. at 12).

The Plaintiff subsequently was transferred to another unit; however, that unit did not contain an handicapped-accessible shower either. (Id.) There, the Plaintiff received one shower in fifteen days. The Plaintiff continued to write grievances and seek assistance with gaining access to an accessible shower. He also verbally requested a transfer to f/n/u Fish and informed Lewis, Fish, and Mays of the attack by Ward and McGlasson. (Id.) The Plaintiff was briefly transferred to the infirmary, which had a handicapped-accessible shower. (Id. at 13).

The Plaintiff filed a grievance against Mays, Lewis, Jordan, Davis, Smith, and Shoa. (Id.) After filing the grievance, Mays, Lewis, and Jordan retaliated against the Plaintiff with the

assistance of Heroux by moving the Plaintiff into a suicide cell. (<u>Id.</u> at 14). The cell was flooded with "foul smelling sewage water." (<u>Id.</u> at 15). The inmate who had been in the cell just prior to the Plaintiff had flooded the cell with human waste and toilet water and had "smeared stuff all over the cell walls as well as cut his stomake [sic] with a shaving razor blade and placed blood on the food trap." (<u>Id.</u> at 14). Because the Plaintiff could not lift himself or his property and no one would assist him, he slept on the floor with his mattress "soaking up the foul smelling sewage water and contaminating" the Plaintiff's blanket. (<u>Id.</u> at 15). When the Plaintiff asked Lewis to be moved out of the suicide cell because he could not transfer himself into the shower and was unable to reach the button for turning the shower off and on, Lewis told the Plaintiff: "If you don't like it, drop your tittle [sic] VI grievance." (<u>Id.</u> at 16).

The Plaintiff fell off the toilet on June 12, 2017. (<u>Id.</u>) He was unable to shower for twelve days. (<u>Id.</u>) The Defendants refused to the move the Plaintiff out of the mental health unit even when he complained that the conditions of his confinement were causing him to have suicidal thoughts. (<u>Id.</u> at 17). On June 22, 2017, the Plaintiff attempted suicide by overdosing on medication, swallowing two razor blades, and placing a metal foreign object "inside of [his] urine track to try to shut down [his] kidneys." (<u>Id.</u> at 18). Even so, Defendant Dr. Sidberry refused to send the Plaintiff to an outside hospital or address the Plaintiff's pain, and he left the Plaintiff lying on the floor with no mattress or clothing. (<u>Id.</u>)

After twenty hours passed, the Plaintiff was taken to a hospital emergency room and underwent two surgeries. (<u>Id.</u>) The Plaintiff was treated at the hospital for four days. (<u>Id.</u>) Upon his release, the Plaintiff was returned to the mental health unit and, despite his continued requests to be moved to a handicapped-accessible unit, was not moved. However, on August 27, 2017, the

Plaintiff was transferred to the Bledsoe County Correctional Complex, a facility that houses wheelchair-confined inmates in accessible cells. (Doc. No. 10).

III.    **Analysis**

The Plaintiff brings his federal claims pursuant to 42 U.S.C. § 1983, the ADA, and the Rehabilitation Act.

A.    **ADA and Rehabilitation Act claims against Defendants Mays, Lewis, Jordan, Heroux, Green, Davis, and Rushing**

The complaint names Mays, Lewis, Jordan, Heroux, Green, Davis and Rushing as Defendants to the Plaintiff's claims under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, *et seq.,* and Section 504 of the Rehabilitation Act of 1973.

The ADA prohibits public entities from discriminating against a qualified individual with a disability on account of that disability in the operation of services, programs, or activities. 42 U.S.C. § 12131(1); Pennsylvania Dep't of Corr. v. Yeskey, 524 U.S. 206, 210 (1998). The ADA is applicable to state and local government entities, including prisons and county jail facilities. See Yeskey, 524 U.S. at 210 (holding that the term "public entity" includes prison facilities); Tucker v. Tenn., 539 F.3d 526, 529 (6th Cir. 2008). Title II's implementing regulations provide that "[a] public entity shall make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability, unless the public entity can demonstrate that making the modifications would fundamentally alter the nature of the services, program, or activity." 28 C.F.R. § 35.130(b)(7).

To establish a prima facie case under the ADA, a plaintiff must show that: (1) he has a disability; (2) he is otherwise qualified; and (3) he is being excluded from participating in, being denied the benefits of, or being subjected to discrimination under the program solely because of his

ability. Anderson v. City of Blue Ash, 798 F.3d 338, 357 (6th Cir. 2015). Title II of the ADA authorizes suits by private citizens for money damages against public entities that violate § 12132. United States v. Georgia, 546 U.S. 151, 160 (2006)(holding that Title II of the ADA validly abrogated state sovereign immunity insofar as it created a private cause of action for damages against the States for conduct that actually violates the Fourteenth Amendment).

The proper defendant to a suit under Title II of the ADA is the public entity or an official acting his or her official capacity. Everson v. Leis, 556 F.3d 484, 501 n.7 (6th Cir. 2009). "Title II of the ADA does not, however, provide for suit against a public official in his individual capacity." Everson, 556 F.3d at 501 n.7; see also Williams v. McLemore, 247 F. App'x 1, 8 (6th Cir. 2007) ("[T]he ADA does not provide for personal liability for defendants sued in their individual capacities. . . . We have held repeatedly that the ADA does not permit public employees or supervisors to be sued in their individual capacities."). Therefore, the Plaintiff's ADA claims against the named Defendants in their individual capacities must be dismissed.

Although the complaint does not list TDOC as a Defendant to the Plaintiff's ADA claims, the complaint names TDOC as a Defendant to this action. Given the liberal construction afforded to *pro se* complaints, and the requirement that the Court construes all well-pleaded allegations in the light most favorable to the Plaintiff, the Court finds that the Plaintiff's allegations state an ADA claim against TDOT. See 28 C.F.R. § 35.133(a) (requiring public entities to "maintain in operable working condition those features of facilities and equipment that are required to be readily accessible and usable by persons with disabilities" as provided for by the ADA or the regulations implementing the ADA); see also Kutrip v. City of St. Louis, 329 Fed.Appx. 683 (8th Cir. 2009) (denying summary judgment where facts issue remained on ADA claim regarding jail officials' denial of

disabled-accessible shower and shower chair to obviously disabled inmate); Doker v. Montgomery County Jail, No. 3:17-cv-00947, 2017 WL 3172745, at *3 (M.D. Tenn. July 26, 2017)(Trauger, J.)(on initial review under PLRA, finding a colorable ADA claim against the county based on inmate's confinement to cell not equipped to meet his needs while he was confined to a wheelchair); Schmidt v. Odell, 64 F. Supp.2d 1014, 1032 (D. Kan. 1999)(denying summary judgment on inmate's ADA claim against jail where plaintiff, a double amputee, was not provided a wheelchair and had to crawl and push himself about the jail on the floor; "The fact the plaintiff was actually able to use most of the jail services does not preclude his claim in light of the fact that he was able to do so only by virtue of exceptional and painful exertion which was contrary to physician's instructions concerning his disability."). Therefore, the Court finds that the Plaintiff's ADA claim against TDOC will proceed for further development.

Next, section 504 of the Rehabilitation Act of 1973 (Rehabilitation Act) provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). To establish a claim under the Rehabilitation Act, a plaintiff must prove (1) that he is a "handicapped person" under the Act; (2) that he is "otherwise qualified"; (3) that he is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of his handicap; and (4) that the program or activity receives federal funds. Burns v. City of Columbus, 91 F.3d 836, 840–41 (6th Cir.1996) (citing Doherty v. S. Coll. of Optometry, 862 F.2d 570, 573 (6th Cir.1988)). If a plaintiff establishes a prima facie case under the Rehabilitation Act, the burden shifts to the defendant to show that the defendant's decision was reasonable under the

circumstances. Id.

Generally speaking, because both the Rehabilitation Act and the ADA prohibit discrimination on the basis of disability, the jurisprudence regarding both statutory schemes has developed in tandem, and the claims are frequently considered as coextensive with each other. See, e.g., Thompson v. Williamson Cnty., 219 F.3d 555, 557 (6th Cir. 2000) (given the similarity between the ADA and the RA, claims brought under both statutes can be analyzed together); Andrews v. Ohio, 104 F.3d 803, 807 (6th Cir.1997) ("Because the standards under both of the acts are largely the same, cases construing one statute are instructive in construing the other.").

The Sixth Circuit Court of Appeals has held that the Rehabilitation Act does not impose personal liability upon individuals. Hiler v. Brown, 177 F.3d 542, 546 (6th Cir.1999) (citing EEOC v. AIC Sec. Investigations, Ltd., 55 F.3d 1276, 1279-81 (7th Cir.1995)). Therefore, the Plaintiff's claims under these statutes apply, if at all, against the state or its agencies, and Plaintiff may not assert a claim against the named Defendants individually pursuant to the Rehabilitation Act. For the same reasons the Court construes the pro se complaint to allege an ADA claim against TDOC, the Court construes the complaint to allege a claim against TDOC under the Rehabilitation Act. This claim will proceed for further development.

### B. Excessive force claims against Defendants Smith, Ward, and McGlasson

The Plaintiff's remaining claims are brought pursuant to 42 U.S.C. § 1983. Title 42 U.S.C. § 1983 creates a cause of action against any person who, acting under color of state law, abridges "rights, privileges, or immunities secured by the Constitution and laws . . . ." To state a claim under § 1983, a plaintiff must allege and show two elements: (1) that he was deprived of a right secured by the Constitution or laws of the United States; and (2) that the deprivation was caused by a person

acting under color of state law.  <u>Tahfs v. Proctor</u>, 316 F.3d 584, 590 (6th Cir. 2003); 42 U.S.C. § 1983.

The complaint alleges that Defendant Smith  used excessive force when he pushed the Plaintiff in his wheelchair face-first into a concrete wall on May 22, 2017, resulting in injuries to the Plaintiff's eye and back.  (Doc. No. 1 at 9).  The complaint also alleges that, later that month, Defendants Ward and McGlasson picked the Plaintiff up in his wheelchair and slammed him to the floor, and that McGlasson also choked the Plaintiff.  (<u>Id.</u> at 11).

It appears that the Plaintiff was a convicted prisoner, not a pre-trial detainee, at the time of the alleged use of excessive force.  The legal status of an alleged victim of excessive force is significant because the conduct of the offending officer must be analyzed under the standard appropriate to the applicable constitutional provision.  <u>See Coley v. Lucas County, Ohio</u>, 799 F.3d 530, 538-39 (6th Cir. 2015)("The Supreme Court has recently clarified . . . that when assessing pretrial detainees excessive force claims we must inquire into whether the plaintiff shows 'that the force purposefully or knowingly used against him was objectively unreasonable.'")(quoting <u>Kingsley v. Hendrickson</u>, ___ U.S. ___, ___ 135 S. Ct. at 2473 (2015)).

Under the Eighth Amendment, which applies to convicted prisoners, an officer's conduct will be found to amount to cruel and unusual punishment "when the[] 'offending conduct reflects an unnecessary and wanton infliction of pain.'" <u>Cordell v. McKinney</u>, 759 F.3d 573, 580 (6th Cir. 2014)(quoting <u>Williams v. Curtin</u>, 631 F.3d 380, 383 (6th Cir. 2011)).  In examining an excessive force claim under the Eighth Amendment, the constitutional analysis has both a subjective and an objective component, requiring the court to determine "whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," and whether

"the pain inflicted was sufficiently serious." Cordell, 759 F.3d at 580 (internal quotation marks and citations omitted) (alteration added). The heightened Eighth Amendment standard acknowledges that "'[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" Id. (quoting Combs v. Wilkinson, 315 F.3d 548, 556 (6th Cir. 2002))(alteration in original).

In determining whether the force used was applied in a good faith effort to restore discipline or rather inflicted for a malicious purpose, it is "proper to evaluate the need for application of force, the relationship between that need and the amount of force used, the threat 'reasonably perceived by the responsible officials,' and 'any efforts made to temper the severity of a forceful response.'" Hudson v. McMillian, 503 U.S. 1, 8, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992) (quoting Whitley v. Albers, 475 U.S. 312, 321, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986)).

"While the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred." Cordell, 759 F.3d at 581 (citing Wilkins v. Gaddy, 559 U.S. 34, 37, 130 S. Ct. 1175, 175 L.Ed.2d 995 (2010)). "'When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident.' " Cordell, 759 F.3d at 581 (quoting Hudson v. McMillian, 503 U.S. 1, 9, 112 S. Ct. 995, 117 L.Ed.2d 156 (1992)) (alteration in original). *De minimus* uses of physical force are generally excluded from recognition under an Eighth Amendment analysis, "provided the use of force is not of a sort 'repugnant to the conscience of mankind.'" Hudson, 503 U.S. at 10, 112 S. Ct. 995 (quoting Whitley v. Albers, 475 U.S. 312, 318–22, 106 S. Ct. 1078, 89 L.Ed.2d 251 (1986)). "The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it." Id. at 8, 112

S. Ct. 995. In the end, a determination of what constitutes "unnecessary and unwanton infliction of pain," is "contextual and responsive to contemporary standards of decency." Hudson, 503 U.S. at 8, 112 S. Ct. 995.

Based on the allegations in the complaint, the Court finds that the Plaintiff states Eighth Amendment excessive force claims under § 1983 against Defendants Smith, Ward, and McGlasson in their individual capacities. Although it is unclear whether the Plaintiff will ultimately prevail on these claims, the allegations of the complaint survive the required PLRA's screening and warrant further factual development.

### C.    Medical needs claims against Defendants Shao and Sidberry

The complaint names Physician's Assistant Shao and Dr. Charles Sidberry as Defendants to the Plaintiff's Eighth Amendment claims alleging deliberate indifference to his serious medical needs.   The United States Supreme Court has held that deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment. Estelle v. Gamble, 429 U.S. 97, 104 (1976).   A claim of deliberate indifference under the Eighth Amendment has both an objective and subjective component.   Rouster v. Cnty. of Saginaw, 749 F.3d 437, 446 (6th Cir. 2014).  A plaintiff satisfies the objective component by alleging that the prisoner had a medical need that was "sufficiently serious." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 834 (1994)).   A plaintiff satisfies the subjective component "by alleging facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." Id.  The requisite intent is more than mere negligence and is more akin to recklessness. Id.

Complaints of malpractice or allegations of negligence are insufficient to entitle plaintiff to relief. <u>Estelle</u>, 429 U.S. at 105-06. A prisoner's difference of opinion regarding diagnosis or treatment also does not rise to the level of an Eighth Amendment violation. <u>Id</u>. at 107. Further, where a prisoner has received some medical attention, but disputes the adequacy of that treatment, the federal courts are reluctant to second-guess the medical judgments of prison officials and constitutionalize claims that sound in state tort law. <u>Westlake v. Lucas</u>, 537 F.2d 857, 860 n.5 (6th Cir. 1976). Finally, to set forth a viable claim for the denial of medical care, the plaintiff must argue that his health suffered as a consequence of such alleged denial. <u>See Thaddeus-X v. Blatter</u>, 175 F.3d 378, 401 (6th Cir. 1999).

As to Defendant Shao, the complaint alleges that, on May 7, 2017, after the Plaintiff fell and sustained injuries to his head and back, Shao examined the Plaintiff but refused to provide the Plaintiff with stronger pain medication. (Doc. No. 1 at 8). These allegations do not support a claim of deliberate indifference to the Plaintiff's serious medical needs by Shao. <u>See Estelle</u>, 429 U.S. at 107; <u>Westlake</u>, 537 F.2d at 860 n.5. Therefore, the Plaintiff's Eighth Amendment claim against Shao will be dismissed.

As to Dr. Sidberry, the Court finds that the medical problems resulting from the Plaintiff's suicide attempt on June 22, 2017, constituted a sufficiently serious medical need. <u>See Rouster</u>, 749 F.3d at 446. As to Dr. Sidberry's state of mind, the complaint alleges that Dr. Sidberry provided no medical assistance to the Plaintiff after confirming the presence of dangerous foreign objects in the Plaintiff's body with x-rays and, instead, left the Plaintiff naked on a cold concrete floor for twenty hours. The Court finds that these allegations, "if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact

14

draw the inference, and that he then disregarded that risk." Id. Consequently, the Plaintiff's claim against Dr. Sidberry in his individual capacity states an Eighth Amendment claim upon which relief can be granted, and this claim shall proceed.

**D. Retaliation claims against Defendants Mays, Lewis, Jordan, Heroux, and Green**

The complaint names Mays, Lewis, Jordan, Heroux, and Green as Defendants to the Plaintiffs' retaliation claims. (Doc. No. 1 at 14). A prisoner's claim that prison officials have retaliated against him for engaging in protected conduct is grounded in the First Amendment. Thaddeus-X v. Blatter, 175 F.3d 378, 388 (6th Cir. 1999) (en banc). To establish a prima facie case of retaliation within the context of § 1983, a plaintiff must prove that: (1) he engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the defendant's conduct was substantially motivated at least in part by retaliation for the plaintiff's protected speech and conduct. Id. at 394-99. In addition to proving a retaliatory motive, the plaintiff must establish that the alleged discriminatory action was punitive in nature by showing other than *de minimis* harm resulting from it. See Ingraham v. Wright, 430 U.S. 651, 674 (1977); Thaddeus-X, 175 F.3d at 396.

The complaint specifically alleges that Defendants Mayes, Lewis, Jordan, and Heroux retaliated against the Plaintiff for complaining about them in his "tittle VI" grievances. (Doc. No. 1 14). The complaint alleges that Defendant Green was present when the other Defendants, in an act of retaliation, moved the Plaintiff from a handicapped-accessible infirmary cell to a non-accessible suicide cell; it is unclear whether Green assisted with the move. (Id.) The complaint further alleges that these Defendants chose this particular cell for the Plaintiff because it had been soiled by the previous occupant and refused to assist the Plaintiff with moving himself or his

property, intentionally causing the Plaintiff to sleep on the filthy, wet cell floor.   Although it is unclear at this early state of the proceedings whether the Plaintiff ultimately can prevail on his retaliation claims, the Court finds that the Plaintiff's allegations of retaliation withstand the required frivolity review.   These § 1983 retaliation claims will be permitted to proceed for further development against Defendants Mayes, Lewis, Jordan, Heroux, and Green in their individual capacities.

      **E.**     **Conditions of confinement claims against Defendants Mays, Lewis, Jordan, Heroux, Green, and  Davis**

Next, the complaint names Mays, Lewis, Jordan, Heroux, Green, and  Davis as Defendants to the Plaintiff's Eighth Amendment conditions of confinement claims.   The Eighth Amendment "imposes duties on [prison] officials, who must provide humane conditions of confinement; prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must 'take reasonable measures to guarantee the safety of the inmates.'" <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)(collecting cases); <u>Grubbs v. Bradley</u>, 552 F. Supp. 1052, 1119-1124 (M.D. Tenn. 1982).  The failure to provide such necessities is a violation of an inmate's right to be free from cruel and unusual punishment.  <u>Bellamy v. Bradley</u>, 729 F.2d 416 (6th Cir. 1984).

Here, the Plaintiff's claims against Mays and Lewis are premised, at least in part, on these Defendants' failure to place or transfer the Plaintiff to a handicapped-accessible cell.   As to Defendants Jordan, Heroux, Green, and Davis, the Plaintiff's claims are premised on the alleged retaliatory transfer of the Plaintiff from his handicapped-accessible cell to a non-accessible  suicide cell that was contaminated with filth.

The Eighth Amendment protects against conditions of confinement that constitute serious health or safety threats, but not against those that cause mere discomfort or inconvenience. <u>Hudson</u>

v. McMillian, 503 U.S. 1, 8 (1992). An inmate "cannot expect the amenities, conveniences and services of a good hotel." Harris v. Fleming, 839 F.2d 1232, 1235 (7th Cir. 1988), quoted in Thaddeus–X v. Blatter, 175 F.3d 378, 405 (6th Cir. 1999). While prison conditions may be "restrictive and even harsh," they do not violate the constitution unless they "deprive inmates of the minimal civilized measure of life's necessities." Rhodes v. Chapman, 452 U.S. 337, 347 (1981). "Not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." Ivey v. Wilson, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam). In the context of a conditions-of-confinement claim, only extreme deprivations can be characterized as punishment prohibited by the Eighth Amendment. Hudson v. McMillian, 503 U.S. 1, 8-9 (1992). For challenged jail conditions to qualify as extreme, they must have resulted in "the deprivation of [at least one] identifiable human need such as food, warmth, or exercise— for example, a low cell temperature at night combined with a failure to issue blankets." Wilson v. Seiter, 501 U.S. 294, 304 (1991). The Plaintiff's allegations about the lack of cleanliness in the suicide cell, combined with the Defendants' alleged knowledge that the Plaintiff would be unable to move himself off the dirty floor due to his ambulatory limitations, may rise to that level.

Further, in the Eighth Amendment context, "a violation of a federally secured right is remediable in damages only upon proof that the violation proximately caused injury." Horn v. Madison Cnty. Fiscal Court, 22 F.3d 653, 659 (6th Cir. 1994). Besides the long-standing legal requirement of an "injury" in case law concerning prisoner complaints, Congress acted to further limit prisoner suits to only a specific kind of injury. Under the PLRA, a lawsuit brought by an institutionalized person requires a "physical" injury in order to permit recovery: "No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for

mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). The physical injury need not be significant, but it must be more than *de minimis* for an Eighth Amendment claim to proceed. See Adams v. Rockafellow, 66 Fed.Appx. 584, 586 (6th Cir. 2003) (citing Siglar v. Hightower, 112 F.3d 191, 193 (5th Cir. 1997)). The Court finds that, for purposes of the PLRA screening, the allegations of the complaint are sufficient to satisfy the requirement for an injury arising from the lack of sanitation of the suicide cell. Therefore, the Plaintiff has stated an Eighth Amendment claim in this regard.

The Plaintiff's claims about his being confined for months in a cell not equipped to address his needs as an inmate confined to a wheelchair are even more concerning. "As a society, we have grown increasingly sensitive to the need to accommodate individuals with disabilities," and courts have repeatedly found that the failure to provide handicapped-accessible facilities to inmates may violate the Constitution. Stoudemire v. Michigan Dept. of Corr., 614 Fed.Appx. 798, 803 (6th Cir. 2015) (quoting Frost v. Agnos, 152 F.3d 1124, 1129 (9th Cir. 1998)). The safety risks associated with confining a handicapped inmate in a cell not equipped for his needs has a level of "obviousness" sufficient to satisfy the objective and subjective elements of a claim for deliberate indifference. Id. at 803-04. Moreover, with regard to Defendants Mays, Lewis, Jordan, Heroux, Green, and Davis, the complaint alleges that these Defendants intentionally moved the Plaintiff into a non-handicapped accessible cell in retaliation for the Plaintiff having filed grievances against them; these allegations support a claim of deliberate indifference. Therefore, the Court finds that the complaint states actionable Eighth Amendment conditions of confinement claims against Defendants Mays, Lewis, Jordan, Heroux, Green, and Davis in their individual capacities based on their roles in the Plaintiff's placement in non-handicapped accessible cells while housed at

Riverbend.

## F. TDOC

Finally, the complaint alleges that TDOC violated the Plaintiff's "right to be free from interference with court access, by implimenting [sic] prison policy's [sic] that unjustifiably obstruct the ability to meet the Exhaustion of Administrative Remedies standards." (Doc. No. 1 at 5).

The Plaintiff filed numerous grievances and complaints regarding his confinement in a non-accessible cell at Riverbend.  Although the Plaintiff may feel that his grievances were not taken seriously or handled properly, a plaintiff cannot premise a § 1983 claim on allegations that the an institution's grievance procedure was inadequate and/or unresponsive because there is no inherent constitutional right to an effective grievance procedure in the first place.  See Hewitt v. Helms, 459 U.S. 460, 467 (1983)(overruled in part on other grounds by Sandin v. Conner, 515 U.S. 472 (1995)); Antonelli v. Sheahan, 81 F.3d 1422, 1430 (7th Cir. 1996); Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994); Flick v. Alba, 932 F.2d 728, 729 (8th Cir. 1991).  Because a prisoner does not have a constitutional right to an effective or responsive grievance procedure, any claim raised by the Plaintiff based on TDOC's failure to respond to his grievances does not state a claim upon which relief can be granted.

To the extent that the Plaintiff claims that TDOC did not follow its own policies and thereby thwarted the Plaintiff from pursuing his administrative remedies, procedural requirements alone do not create a substantive liberty interest, and mere violation of such procedures is not a constitutional violation.  Hewitt v. Helms, 459 U.S. 460, 471 (1983); Levin v. Childers, 101 F.3d 44, 46 (6th Cir.1996) ("there is a fundamental logical flaw in viewing the process as a substantive end in

itself"); Harrill v. Blount County, Tenn., 55 F.3d 1123, 1125 (6th Cir. 1995) (state law cannot create a federal constitutional right); Spruytte v. Walters, 753 F.2d 498, 508 (6th Cir.1985) (violation of state law does not by itself constitute deprivation of due process). After Sandin, it is clear that mandatory language in prison regulations does not create a liberty interest protected by the due process clause. Rimmer–Bey v. Brown, 62 F.3d 789, 790-91 (6th Cir. 1995). Thus, to the extent that the complaint asserts that TDOC did not comply with its own regulations to the Plaintiff's detriment, the Plaintiff has not suffered any deprivation of due process because of such noncompliance.

To the extent that the complaint alleges TDOC interfered with the Plaintiff's right to access to courts, the law is well settled that a prisoner has a First Amendment right of access to the courts. Bounds v. Smith, 430 U.S. 817, 821-823 (1977). The right of access to the courts requires prison officials to ensure that inmates have access to the courts that is "adequate, effective and meaningful." Id. at 822. To ensure the meaningful exercise of this right, prison officials are under an affirmative obligation to provide inmates with access to an adequate law library, Walker v. Mintzes, 771 F.2d 920, 931 (6th Cir. 1985), or some alternative form of legal assistance. Procunier v. Martinez, 416 U.S. 396, 419 (1974)(overruled on other grounds by Thornburgh v. Abbott, 490 U.S. 401 (1989)). Meaningful access varies with the circumstances, and prison officials are accorded discretion in determining how that right is to be administered. Bounds, 430 U.S. at 830-31. However, it is not enough for plaintiff simply to claim that he was denied access to the courts, or that he did not have access to an adequate law library or to some alternate form of legal assistance. To state a claim on which relief may be granted, plaintiff must show that a defendant's conduct in some way prejudiced the filing or prosecution of a legal matter. Walker, 771 F.2d at 932; Kensu v. Haigh, 87 F.3d 172, 175 (6th Cir. 1996).

Although the complaint alleges that TDOC interfered with the Plaintiff's "right to be free from interference with court access," (Doc. No. 1 at 5), the complaint does not allege that any action by TDOC prejudiced either the Plaintiff's filing or prosecution of a legal matter. Thus, the complaint fails to state an actionable claim under the First Amendment for the denial of access to the courts. The Plaintiff's claims against TDOC, other than the Plaintiff's ADA and Rehabilitation Act claims against TDOT as discussed above in Section IIIA, will be dismissed.

## IV.    Conclusion

In conclusion, the Court has reviewed the complaint pursuant to the PLRA and finds that the complaint states colorable ADA and Rehabilitation Act claims against TDOT; however, the Plaintiff's ADA and Rehabilitation Act claims against all other Defendants fail to state claims upon which relief can be granted, and those claims will be dismissed. Further, the Court finds that the complaint states colorable claims pursuant to § 1983 as follows: Eighth Amendment excessive force claims against Smith, Ward, and McGlasson in their individual capacities; Eighth Amendment deliberate indifference to medical needs claims against Dr. Sidberry in his individual capacity; First Amendment retaliation claims against Mays, Lewis, Jordan, Heroux, and Green in their individual capacities; and Eighth Amendment conditions of confinement claims against Mays, Lewis, Jordan, Heroux, Green, and Davis in their individual capacities. These claims shall proceed for further development of the record. 28 U.S.C. § 1915A.

However, the complaint fails to state § 1983 claims upon which relief can be granted as to all other claims against all other named Defendants. Therefore, those claims and Defendants will be dismissed.

An appropriate Order will be entered.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE